IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **GREAT MIDWEST INSURANCE COMPANY,** | ) ) ) |
| Plaintiff. | ) ) ) |
| v. | ) Case No. 6:24-cv-535 ) |
| **BLUE RIDGE POWER, LLC,** | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiff, GREAT MIDWEST INSURANCE COMPANY, and files its Complaint for Declaratory Judgment against Defendant, BLUE RIDGE POWER, LLC, and in support thereof, would respectfully show unto the Court as follows:

**I.     PARTIES**

1. Plaintiff, Great Midwest Insurance Company ("**GMIC**" or "**Plaintiff**"), is a Texas corporation formed with its principal place of business in Houston, Texas, which is the location from which GMIC's high level officers direct, control, and coordinate GMIC's corporate activities. As such, for purposes of diversity jurisdiction, GMIC is a Texas resident for all purposes.

2. Defendant, Blue Ridge Power, LLC, ("**Blue Ridge**" or "**Defendant**"), is a North Carolina limited liability company with its principal place of business in Asheville, North Carolina, which is the location from which Blue Ridge's high-level officers direct, control, and coordinate Blue Ridge's corporate activities. Upon information and belief, Blue Ridge's sole Member is Blue Ridge Power Holdings Company, a North Carolina limited liability company. Upon information and belief, all individual members of Blue Ridge and/or its parent companies, such as Blue Ridge

Power Holdings Company, are residents of North Carolina. As such, for purposes of diversity jurisdiction, Blue Ridge is a North Carolina resident. Blue Ridge can be served with process by serving its Texas Registered Agent of Record, Registered Agent Solutions, Inc. at Corporate Center One, 5301 Southwest Parkway, Suite 400, Austin, Texas 78735, or wherever else it may be found.

## II.     JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(2), as two of the three projects at issue are located in Milam County, Texas, which is located in the Judicial District for the U.S. District Court for the Western District of Texas. In other words, a substantial part of the events or omissions giving rise to this action occurred in the Judicial District for the U.S. District Court for the Western District of Texas.

## III.     EXECUTIVE SUMMARY

5.      Plaintiff, GMIC, is a commercial surety company who, in the ordinary course of its business, regularly executes bonds on behalf of its principals. The Bonds (as hereinafter defined) in this case were written for a principal named Jones Contractors, Inc. ("**Jones**"). Blue Ridge has released Jones on each of the three contracts bonded by GMIC following an Assignment, Assumption, and Novation Agreement entered into by Blue Ridge and Jones on December 23, 2023. Under the Assignment, Assumption, and Novation Agreement, Blue Ridge accepted the assignment of the bonded contracts from Jones to JB Group of LA, LLC d/b/a Infrastructure Solutions Group ("**ISG**") and thereby Blue Ridge released Jones from all obligations under the

contracts. Blue Ridge has now asserted a claim against three Bonds, alleging that ISG, not Jones, has defaulted on the contracts. By and through this lawsuit, Plaintiff seeks a judicial determination and declaration from this Court as to the validity, enforceability, and recoverability, if any, of Blue Ridge's claims against the Bonds.

## IV.   FACTS

**A.   The Subcontracts and the Bonds.**

6. On or around March 13, 2023, Jones and Blue Ridge entered into a subcontract for work to be performed on the Platteview Solar Project in Yutan, Nebraska for a total sum of $5,500,000.00 (hereinafter, the "**Platteview Subcontract**").

7. On or around July 25, 2023, Jones and Blue Ridge entered into a subcontract for work to be performed on the Gransolar Solar Project in Milam County, Texas for a total sum of $6,897,392.50 (hereinafter, the "**Gransolar Subcontract**").

8. On or around September 29, 2023, Jones and Blue Ridge entered into a subcontract for work to be performed on the Jungmann Solar Project in Buckholts, Texas for a total sum of $3,106,109.66 (hereinafter, the "**Jungmann Subcontract**").

9. The Platteview Subcontract, the Gransolar Subcontract, and the Jungmann Subcontract are collectively referred to herein as the "**Subcontracts**." True and correct copies of the Subcontracts are attached hereto as *Exhibit "A"* and are incorporated herein by reference.

10. On or around March 1, 2023, Jones entered into a General Indemnity Agreement in favor of GMIC, whereby Jones and its individual owner covenanted, promised, and agreed to indemnify and hold harmless GMIC from and against any and all loss whatsoever, which GMIC may sustain or incur as a result of any bonds issued on behalf of Jones.

11. In connection with the Platteview Subcontract, and in reliance on the March 1, 2023

General Indemnity Agreement, on or about March 13, 2023, Jones obtained a Payment Bond and a Performance Bond from GMIC, No. 223840, naming Blue Ridge as obligee and Jones as the principal with a penal sum in the amount of $5,500,000.00 (hereinafter the "**Platteview Bonds**").

12. In connection with the Gransolar Subcontract, and in reliance on the March 1, 2023 General Indemnity Agreement, on or about August 9, 2023, Jones obtained a Payment Bond and a Performance Bond from GMIC, No. 227339, naming Blue Ridge as obligee and Jones as the principal with a penal sum in the amount of $6,897,392.50 (hereinafter the "**Gransolar Bonds**").

13. In connection with the Jungmann Subcontract, and in reliance on the March 1, 2023 General Indemnity Agreement, on or about September 29, 2023, Jones obtained a Payment Bond and a Performance Bond from GMIC, No. 231552, naming Blue Ridge as obligee and Jones as the principal with a penal sum in the amount of $3,106,109.66 (hereinafter the "**Jungmann Bonds**").

14. The Platteview Bonds, the Gransolar Bonds, and the Jungmann Bonds are collectively referred to herein as the "**Bonds**." True and correct copies of the Bonds are attached hereto as *Exhibit "B"* and are incorporated herein by reference.

**B.    Jones' Assignment of the Subcontracts and Blue Ridge's Release of Jones.**

15. On or around December 23, 2023, and unbeknownst to GMIC, Jones, Blue Ridge, and ISG entered into a three-party Assignment, Assumption, and Novation Agreement (hereinafter the "**Assignment**"). A true and correct copy of the Assignment is attached hereto as *Exhibit "C"* and is incorporated herein by reference.

16. Under the Assignment, Jones irrevocably sold, assigned, granted, conveyed, and transferred to ISG all right, title, and interest in all three Subcontracts, and ISG unconditionally accepted the assignment and assumed all of Jones's duties, liabilities, and obligations under the Subcontracts. *See Exhibit C*, ¶ 1.

17. Also under the Assignment, Blue Ridge expressly released and forever discharged Jones from all further obligations arising under the Subcontracts, and from all manner of actions, causes of action, suits, debts, damages, expenses, claims, and demands whatsoever that Blue Ridge has or may have against Jones in all cases to the extent arising out of in any way connected to performance under the Subcontracts. *See **Exhibit C**,* ¶ 2(a).

18. The Assignment goes further to state that the three parties intend for the Agreement to be a novation, and that ISG be substituted for Jones in the Subcontracts. Additionally, the Agreement states that ISG is responsible for all duties, liabilities, and obligations of Jones under the Subcontracts. *See **Exhibit C**,* ¶ 2(c)

**C.     The Bond Claims.**

19. On or about October 1, 2024, Blue Ridge sent correspondence to GMIC to make a claim on the Platteview Bonds (hereinafter, the "**Platteview Bond Claim Notice**"). More specifically, Blue Ridge alleges that ISG, not Jones, has abandoned its work on the Platteview Subcontract. Blue Ridge ultimately claims it terminated ISG from the Platteview Subcontract on August 5, 2024. Blue Ridge demanded that GMIC take action under the Platteview Bonds to perform the balance of the work and to also remove liens on the project resulting from allegations of ISG's subcontractors being unpaid on the project.

20. On or about October 1, 2024, Blue Ridge sent correspondence to GMIC to make a claim on the Gransolar Bonds (hereinafter, the "**Gransolar Bond Claim Notice**"). More specifically, Blue Ridge acknowledges that the Gransolar project is complete, but alleges that ISG, not Jones, has failed to pay subcontractors and suppliers on the project, resulting in liens and claims from those subcontractors. Blue Ridge ultimately claims it terminated ISG from the Gransolar Subcontract on August 5, 2024. Blue Ridge demanded that GMIC take action under the Gransolar

Bonds to remove liens and resolve claims on the project resulting from allegations of ISG's subcontractors being unpaid on the project.

21. On or about October 1, 2024, Blue Ridge sent correspondence to GMIC to make a claim on the Jungmann Bonds (hereinafter, the "**Jungmann Bond Claim Notice**"). More specifically, Blue Ridge acknowledges that the Jungmann project is complete, but alleges that ISG, not Jones, has failed to pay subcontractors and suppliers on the project, resulting in liens and claims from those subcontractors. Blue Ridge ultimately claims it terminated ISG from the Jungmann Subcontract on August 5, 2024. Blue Ridge demanded that GMIC take action under the Jungmann Bonds to remove liens and resolve claims on the project resulting from allegations of ISG's subcontractors being unpaid on the project.

22. The Platteview Bond Claim Notice, the Gransolar Bond Claim Notice, and the Jungmann Bond Claim Notice are collectively referred to herein as the "**Bond Claim Notices**." True and correct copies of the Bond Claim Notices are attached hereto as *Exhibit "D"* and are incorporated herein by reference.

23. On October 9, 2024, GMIC responded to the Bond Claim Notices to deny Blue Ridge's claims on each of the Bonds (hereinafter, the "**Denial Letter**"). GMIC's denial is based on the fact that its principal, Jones, has been released on each of the Subcontracts, and therefore, GMIC, as surety, has no further obligation on the Bonds. A true and correct copy of the Denial Letter is attached hereto as *Exhibit "E"* and is incorporated herein by reference.

### V.   COUNT ONE

*Declaratory Judgment – Surety Not Liable On Performance Bonds*

24. GMIC incorporates by reference the allegations contained in the preceding paragraphs.

25. GMIC requests that this Court confirm that GMIC is not liable to Blue Ridge on the Bonds in light of (i) Blue Ridge's release of GMIC's principal, Jones, under the Assignment, and (ii) the cardinal change that resulted from the Assignment.

**A.     GMIC is Not Liable on the Bonds Because Blue Ridge Released GMIC's Principal.**

26. An obligee's release of its bonded subcontractor on that specific bonded subcontract also results in a release of that subcontractor's surety on the related bond. That is because a surety stands in the shoes of its principal and may assert the defenses available to principal. *See Houston Fire & Casualty Ins. Co. v. E.E. Cloer General Contractor, Inc.*, 217 F.2d 906, 910 (5th Cir. 1954). Accordingly, GMIC, as the surety, may assert any defense against Blue Ridge that is available to Jones, GMIC's principal, including release.

27. If the principal receives a discharge from its bonded obligations, the surety's liability terminates as well. *See Continental Bank & Trust Co. v. American Bonding Co.*, 605 F.2d 1049, 1054 (8th Cir. 1979). That is because the surety's responsibilities and obligations are only as a secondary guarantor of the principal.

28. There is no doubt that Blue Ridge has released Jones on all three Subcontracts by virtue of language in the Assignment:

> 2. Novation.
>
> (a) Despite anything to the contrary in the Assigned Contracts, Remaining Party releases and forever discharges Assigning Party from all further obligations arising under the Assigned Contracts, and from all manner of actions, causes of action, suits, debts, damages, expenses, claims, and demands whatsoever that Remaining Party has or may have against Assigning Party, in all cases to the extent arising out of or in any way connected to performance under the Assigned Contracts from and after the Effective Date.

See **Exhibit C**, ¶ 2(a).

29. The Assignment makes no mention of the Bonds. Therefore, Blue Ridge has not made any reservation of rights against GMIC under the Bonds. To do so, Blue Ridge was required

to expressly state such a reservation of rights in the Assignment. *See Kiski Area Sch. Dist. v. Mid-State Sur. Corp.*, 600 Pa. 444, 453, 967 A.2d 368, 373 (2008) ("Such a rule provides predictability and reduces the need to litigate the multifaceted circumstances underlying a document that is clear on its face.").

30. Because Blue Ridge has released the primary obligor on the Bonds (Jones), the secondary obligor or surety (GMIC) must also be released on the Bonds. Accordingly, GMIC is entitled to a declaration from this Court that GMIC is discharged on the Bonds.

**B.     GMIC is Not Liable on the Bonds Because of the Cardinal Change in the Subcontract.**

31. Although a "mere formalistic" change in a principal's identity will normally not discharge a surety, a substantial alteration in the underlying obligation will result in discharge if made without the surety's knowledge or consent.

32. Because it is assumed that a surety bases its decision to provide a bond in large part upon the principal's specific financial situation and ability to perform, a change in the principal can materially increase the risk to the surety. As a result, a change in the principal, without the surety's knowledge or consent, operates to discharge the surety's obligations under the bond.

33. GMIC was not made aware of the Assignment until after Blue Ridge made its claim on the Bonds. Therefore, GMIC could not have consented to the Assignment, which substituted ISG for Jones on the Subcontracts.

34. In fact, Blue Ridge makes no complaints of Jones under the Subcontracts or the Bonds. Instead, Blue Ridge alleges that ISG (not Jones) has defaulted on the Subcontracts and failed to pay subcontractors and suppliers.

35. Blue Ridge's argument is that ISG is simply a replacement principal on the Subcontracts and Bonds as a result of the Assignment that released GMIC's principal—Jones. However, GMIC did not underwrite to provide a bond on behalf of ISG, and ISG is a separate and

distinct entity with separate ownership, management, and control from Jones.

36. Under the Assignment, ISG specifically assumed the Subcontracts, along with "all duties, liability, and obligations of [Jones]." *See* **Exhibit C**, ¶ 2(c). In fact, Blue Ridge admits in the Bond Claim Notices that ISG (not Jones) has defaulted and failed to pay its subcontractors and suppliers. *See* **Exhibit D**. As a result, Jones cannot be liable to the subcontractors and suppliers of ISG. Therefore, GMIC, as the surety and secondary obligor, cannot be liable.

37. The change in party to the Subcontracts is a substantial alteration of the bonded obligation that has increased the surety's risk, and therefore, the substitution and change of the principal is a cardinal change that has operated to discharge GMIC's obligation under the Bonds. *See* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 41 (1996). Accordingly, GMIC is entitled to a declaration from this Court that GMIC is discharged on the Bonds.

## VI. COUNT TWO

### *Declaratory Judgment – Surety Not Liable on Payment Bonds*

38. GMIC incorporates by reference the allegations contained in the preceding paragraphs.

39. GMIC requests that this Court confirm that GMIC is not liable to Blue Ridge on the Bonds as a result of ISG's (not Jones's) failure to pay its subcontractors and suppliers on the Projects.

40. In addition to discharging GMIC's obligations under the performance Bonds by the release of Jones, Blue Ridge's release of Jones and substitution of ISG operates to relieve GMIC of liability under the payment Bonds for labor and/or materials supplied by subcontractors or suppliers to ISG on the Projects.

41. As discussed above, the alleged unpaid subcontractors and suppliers are unpaid by

ISG, not Jones. GMIC is not a secondary guarantor or obligor for ISG.

42. In other words, the subcontractors or suppliers that provided labor and/or materials to ISG for the Projects following the Assignment are not proper claimants under the payment Bonds.

43. The Bonds specifically define *Claimant* as one "having a direct contract with the [Principal] or with a subcontractor of the [Principal] to furnish labor, materials or equipment for use in the performance of the [Subcontract]." *See* **Exhibit B**. ISG is neither the principal on the Bonds, nor a subcontractor of Jones—the true principal on the Bonds.

44. When Blue Ridge released Jones from the Subcontract, Jones obligations under the Subcontract were released. In addition, ISG accepted the assignment and assumed all of Jones' obligations while agreeing to "pay, perform, and discharge, as and when due, all of the obligations of [Jones] under the [Subcontracts]." *See* **Exhibit C**, ¶ 1. As such, GMIC cannot be held liable for the obligations of ISG.

45. For the reasons stated above, GMIC is further entitled to a declaration from this Court that GMIC is discharged on the Bonds.

### VII.   COUNT THREE

*Declaratory Judgment – Attorneys' Fees*

46. GMIC incorporates by reference the allegations contained in the preceding paragraphs.

47. Blue Ridge's untimely and unsupported demands upon GMIC have forced GMIC to retain the undersigned attorneys, and accordingly, Blue Ridge is liable for all reasonable attorneys' fees, costs and expenses incurred by GMIC in exercising its right and remedies under Texas law. TEX. CIV. PRAC. & REM. CODE § 37.009.

48. As such, GMIC requests that this Court award GMIC its reasonable and necessary attorneys' fees as are equitable and just pursuant to Texas law.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, GMIC seeks declaration from the Court pursuant to 28 U.S.C. § 2201 that: (1) Blue Ridge's release of Jones under the Subcontracts by virtue of the terms of the Assignment releases GMIC of liability under the Bonds; (2) GMIC is discharged on the Bonds as a result of Blue Ridge's cardinal change resulting from the assignment of the Subcontracts to ISG; (3) GMIC is not liable under the payment Bonds for labor and materials supplied by those claimants to ISG; and (4) Blue Ridge is liable to GMIC for its attorneys' fees and expenses incurred by GMIC in exercising its right and remedies.

Respectfully submitted,

**DRY LAW, PLLC:**

By: */s/ Steven K. Cannon*
Steven K. Cannon
State Bar No. 24086997
Michael Perez
State Bar No. 24032950
909 18th Street
Plano, TX 75074
(972) 797-9510 Telephone
(972) 797-9510 Facsimile
scannon@drylaw.com
mperez@drylaw.com

**ATTORNEYS FOR GREAT MIDWEST INSURANCE COMPANY**